IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDGAR WILLIAMS, Individually and as Personal Representative of the Estate of Linda Kay Williams, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 22-cv-279-RAW-DES<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendant United States of America's ("Defendant" or "USA") Motion to Dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1). (Docket No. 10). On December 5, 2022, United States District Judge Ronald A. White referred this case to Magistrate Judge Kimberly E. West for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. (Docket No. 9). On June 2, 2023, the Court Clerk reassigned the undersigned Magistrate Judge as the referral judge for this case. (Docket No. 21). For the reasons set forth below, Defendant's Motion to Dismiss should be GRANTED.

I.   Background

On October 26, 2018, Plaintiff's wife, Linda Kay Williams ("LKW") was taken to the emergency department at Muscogee (Creek) Nation Medical Center, in Okmulgee, Oklahoma ("Hospital") with complaints of weakness, uncontrolled bowel and urine, and altered mental status. She was seen by emergency medicine physician Kenneth Kirk, MD ("Dr. Kirk") and underwent placement of a left subclavian central venous catheter. Plaintiff alleges that this catheter was errantly placed in LKW's left subclavian artery instead of the vein, and when the medication was

infused, it caused LKW to have a seizure, cerebral injury, and eventually death. (Docket No. 2, p. 5, ¶6.2).

On September 28, 2020, Plaintiff submitted his claims through an SF-95 to the Department of Health and Human Services ("DHS") pursuant to 28 U.S.C. §§ 2401(b), 2672 and 2675(a), describing his claim as "a 10/26/18 medical negligence claim against the Muscogee (Creek) Nation Medical Center in Okmulgee, Oklahoma, for having inserted a central line into the subclavian artery instead of into the subclavian vein. As a result, brain damage occurred followed by death on 3/5/19." (Docket No. 15, Exhibit C). On February 17, 2022, Plaintiff received a response from DHS requesting additional medical records and other documents. *Id.* at Exhibit D. It is unclear from the Pleadings whether Plaintiff complied with DHS's request. On April 4, 2022, DHS sent a letter denying Plaintiff's administrative claim and concluding "[t]he evidence fails to establish that the death was the result of negligent acts or omissions of a federal employee." *Id.* at Exhibit E. According to the denial letter, DHS determined that "Kenneth Kirk, M.D., was employed by an independent contractor at the time . . . and is therefore not covered under the [Federal Tort Claims Act]." ("FTCA"). *Id.* Having complied with the procedural prerequisites, Plaintiff filed this complaint against the United States of America on September 30, 2022. (Docket No. 2).

In response to the Complaint, Defendant filed a Motion to Dismiss, alleging this Court lacks subject matter jurisdiction over Plaintiff's claims and that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1). (Docket No. 10). Defendant claims that while Plaintiff alleges he does not know the identity of the provider who placed the central line, the medical records are clear that the provider was Dr. Kirk. Defendant points out that the medical records authored by Dr. Kirk, indicate the placement of the central line in the left subclavian vein was performed by "Self." *Id.* at p. 2, ¶4. Defendant states that Dr. Kirk was not an employee of the Hospital, but rather was

working as an independent contractor under an Agreement between the Muscogee (Creek) Nation Medical Center and Berry E. Winn, MD, PLLC ("Agreement"). Under the Agreement, the physicians working for Winn were "at all times acting and performing services as independent contractor and not as employees, agents, or borrowed servants of, or joint ventures or partners with Hospital." *Id.* at p. 3, ¶7. Based on this, Defendant argues that Dr. Kirk, was not and could not be considered an employee of the Hospital and *ergo* an employee of the United States of America, and thus the United States is not liable for his actions. *Id.* at p. 5. By not alleging that an employee of the United States was negligent, Plaintiff has failed to comply with the plain language of the FTCA and therefore this Court lacks jurisdiction. *Id.* For the reasons set forth below, the undersigned Magistrate Judge agrees.

II.     Analysis

Under Fed. R. Civ. P. 12(b)(1) a party may assert a defense to a complaint for lack of subject-matter jurisdiction. There are two types of Rule 12(b)(1) motions, (1) those which attack the complaint on its face, and (2) those which attack the existence of subject matter jurisdiction in fact, quite apart from any pleading. *See Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). When there is an attack of the complaint on its face, a district court's review is similar to a Rule 12(b)(6) motion in that "a district court must accept the allegations in the complaint as true." *Id.* at 1002. However, for a Rule 12(b)(1) motion attacking the facts upon which subject matter jurisdiction exists, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id*. at 1003. Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited since "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional

facts." *Id.* Under this authority, the undersigned Magistrate Judge looks at the Pleadings presented along with all attached exhibits.

    a. DEFENDANT ARGUES THAT DR. KIRK WAS AN INDEPENDENT CONTRACTOR

"[T]he United States can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976); see also *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Aviles v. Lutz*, 887 F.2d 1046, 1048 (10th Cir. 1989) (stating that, where Congress had not authorized suit under the FTCA, the district court was "without subject matter jurisdiction"). Under 28 U.S.C. § 1346(b)(1), the FTCA waives sovereign immunity for certain state law tort claims against the United States, including for

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff's claims against the United States relate to the care and treatment provided to LKW by the providers at the Muscogee (Creek) Nation Medical Center. The allegations in the Complaint indicate that "[w]homever were the clinicians at the Hospital who attempted the placement of a left subclavian central line did so negligently, which negligence contributed to, or was the direct cause of, LKW's death on 3/5/2019." (Docket No. 2, p. 5). Defendant alleges that it was Dr. Kirk who placed the central line. (Docket No. 10, p. 2). Dr. Kirk is not an employee of the Hospital; in fact, the Agreement between Dr. Kirk's employer and the Hospital specifically states that "it is mutually understood and agreed that Contractor and the Physicians . . . are at all times acting and performing Services as independent contractor and not as employees, agents, or borrowed servants of, or joint ventures or partners with Hospital." (Docket No. 10, Exhibit 3

"Agreement" at Article VI, 6.1). The Tenth Circuit has held that the FTCA does not allow vicarious liability to attach to the United States for the actions of independent contractors. "[I]ndependent contractors are not employees. As such, 'the FTCA does not authorize suits based on the acts of independent contractors or their employees'." *Tsosie v. U.S.,* 452 F.3d 1161, 1163 (10th Cir. 2006) (quoting *Curry v. United States*, 97 F. 3d 412, 414 (10th Cir. 1996)). Plaintiff argues that while independent contractors are not deemed to be employees, Dr. Kirk might nevertheless have been an acting as an agent for the United States when he performed the procedure. (Docket No. 15, p. 5, ¶18). Plaintiff further argues that the Tenth Circuit in *Lilly v. Firestone*, 876 F.2d 857, 859 (10th Cir. 1989) determined that when deciding a physician's employment status, the court must "determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible." (Docket No. 15, p. 8).

The "'critical question' in determining whether an individual is a federal employee or an independent contractor for purposes of the FTCA is 'whether the federal government has the power to control the detailed physical performance of the individual' . . . [W]e must determine whether the government has the power to control the detailed physical performance of the individual." *Tsosie,* 452 F.3d at 1163 (quoting *Duplan v. Harper,* 188 F.3d 1195, 1200 (10th Cir. 1999). However, a physician "must have discretion to care for a patient and may not surrender control over certain medical details." *Lilly*, 879 F. 2d at 859. Thus, the factors to consider when determining the employment status of an individual for purposes of the FTCA are:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Tsosie,* 452 F.3d at 1163-64 (quoting *Lilly,* 876 F.2d at 859). In the present case, Defendant provides the Agreement between Dr. Kirk's employer, Winn, and the Hospital which specifically sets forth the intent of the parties. As noted above, Article VI of the Agreement states "it is mutually understood and agreed that Contractor and the Physicians . . . are at all times acting and performing Services as independent contractor and not as employees, agents, or borrowed servants of, or joint ventures or partners with Hospital." (Docket No. 10, Exhibit 3 "Agreement" at Article VI, 6.1). The Agreement also states that "Hospital does not reserve the right by this Agreement to control the details, manner or methods by which such Contractor and the Physicians perform their work." *Id.* Thus, the first and second factors of the *Lilly* test favor the United States.

Under the Agreement, the Hospital is to provide the equipment, which would be the only factor that would favor Dr. Kirk's employment status as an employee. (Docket No. 10, Exhibit 3 "Agreement" at Article II[I], 3.1) However, the Tenth Circuit has determined that "[w]hen a physician shows up to work in today's world—either as an independent contractor or a full-fledged employee—he no longer is likely to carry all relevant medical instruments in a black satchel. Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service." *Tsosie*, 452 F.3d at 1164. Factors four and five are addressed in the Agreement and it is clear the Contractor and Physicians are responsible for providing their own liability insurance (Docket No. 10, Exhibit 3 "Agreement" at Article VIII, 8.1) and for paying taxes that may be assessed by any governmental agency or entity. *Id.* at Article VI, 6.2. The Tenth Circuit has not found that federal regulations prohibit the subcontracting of emergency medical services, *Tsosie,* 452 F.3d at 1164, therefore factor six is in line with what the Hospital and the Contractor arranged under the Agreement. Finally, nothing in the Agreement limits the ability of the Contractor to subcontract; therefore, the last factor is also met. Both the express language in

the Agreement identifying Dr. Kirk as an independent contractor, and under the *Lilly* factors it is determined that Dr. Kirk was an independent contractor and therefore the United States is not liable for his actions.

Plaintiff further argues that Dr. Kirk would be a constructive employee pursuant to the Indian Self Determination and Education Assistance Act ("ISDEAA") which provides FTCA protection to an "individual who provides health care services pursuant to a personal services contract with a tribal organization" for a facility under the jurisdiction of the Indian Health Service. 25 U.S.C. § 5321(d). This Court has already determined that a private individual cannot enter into a self-determination contract. *Wooten v. Hudson*, 71 F. Supp. 2d 1149, 1152 (E.D. Okla. 1999). Under the clear and unambiguous terms of the statute, the individual seeking FTCA protection must be a party to a contract with a tribal organization. *Id*. Here Dr. Kirk's contract is with Winn. Winn is the party contracting with the Nation. The undersigned Magistrate Judge finds nothing in the pleadings that would trigger the application of the ISDEAA.

    b.   DISCRETIONARY FUNCTION EXCEPTION

As has been established above, the FTCA waives sovereign immunity for certain state law tort claims against the United States. 28 U.S.C. § 1346(b)(1). This provision is subject to 28 U.S.C. § 2680, which lists exceptions to the FTCA's waiver of sovereign immunity. One such exception is the discretionary function exception. 28 U.S.C. § 2680(a). This statute exempts the government from liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id*. Plaintiff argues that even if Dr. Kirk was not an employee, the United States would still be "liable for having negligently contracted with an unqualified and unskilled internal medicine physician to staff its emergency

room and to preform invasive emergency procedures on its unwitting patients." (Docket No. 2, p. 6, ¶6.13). However, the Tenth Circuit, and indeed many Circuits around the United States, have concluded that "[d]ecisions regarding employment and termination are inherently discretionary, especially where . . . the relevant statutes provide no guidance or restrictions[,]" and are "precisely the types of administrative action the discretionary function exception seeks to shield . . . ." *Richman v. Straley*, 48 F.3d 1139, 1146-47 (10th Cir. 1995) citing *Williams v. Collins,* 728 F.2d 721 (5th Cir. 1984). "Employment and termination decisions are, as a class, the kind of matters requiring consideration of a wide range of policy factors, including 'budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition.'" *Sydnes v. U. S.*, 523 F.3d 1179, 1186 (10th Cir. 2008) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)). In the present case, the Hospital's decision to credential Dr. Kirk and grant him hospital privileges falls squarely within the discretionary function exception of the FTCA.

    c.   THE ACTIONS OF NURSE PAULA HUNALP, RN

Finally, in his Response to Defendant's Motion to Dismiss, Plaintiff raises the argument that the administration of the medication by Paula Hunalp, RN through the misplaced central line without first verifying the patency of the line was a departure from the nursing standard of care. (Docket No. 15, p. 10-11). Plaintiff indicates that if Nurse Hunalp is an employee of the Hospital, this Court would have jurisdiction over his claims. *Id.* at 11. Defendant argues that Nurse Hunalp's employment status is irrelevant, and the undersigned Magistrate Judge agrees.

Plaintiff's complaint centers around the misplacement of the subclavian central line and he argues that the misplacement negligently contributed to or was the direct cause of LKW's death. (Docket No. 2, p. 5, ¶6.5). Plaintiff does not mention Nurse Hunalp or her role in the care and

treatment of LKW in either his filed Complaint or his SF-95 administrative claim. The only claim Plaintiff raises against the United States is the insertion of "a central line in the subclavian artery instead of into the subclavian vein." (See Plaintiff's SF-95 Claim for Damage, Injury, or Death submitted on May 26, 2020).[1] Plaintiff does not indicate any claims regarding Nurse Hunalp in any manner until his Response to Defendant's Motion to Dismiss. Plaintiff does indicate that medication infused through the misplaced catheter caused seizures, cerebral injury and eventually death (Docket No. 2, p. 5. ¶6.2), however, the medication administration is not what Plaintiff alleges caused the injuries, but rather it is and has always been the misplacement of the subclavian central line. The information in his SF-95 Claim and Complaint point to the misplaced subclavian central line as the cause of LKW's death. *Id* at ¶6.5, and Plaintiff's SF-95 Claim for Damage, Injury, or Death submitted on May 26, 2020.

   III.    Conclusion

Based on evidence presented by Defendant that Dr. Kirk was the proceduralist who placed the subclavian central line and the evidence that Dr. Kirk was at all times an independent contractor rather than an employee of the United States of America, this Court lacks subject matter jurisdiction over Plaintiff's claims. Plaintiff has failed to allege that a government employee was negligent as required by the FTCA. Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion to Dismiss (Docket No. 10) be GRANTED and this case be dismissed for lack of subject matter jurisdiction.

---

[1] Under Basis of Claim, Plaintiff indicates "This is a 10/26/18 medical negligence claim against the Muscogee (Creek) Nation Medical Center in Okmulgee, Oklahoma, for having inserted a central line into the subclavian artery instead of into the subclavian vein. As a result, brain damage occurred followed by death on 3/5/19." Under the Personal Injury/ Wrongful Death box of SF-95, Plaintiff indicates: "Central line venous catheter misplacement into the subclavian artery caused seizures, neurologic injury, and ultimately death."

Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 28th day of August, 2023.

_____
D. Edward Snow
United States Magistrate Judge